IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BOBBIE READY, as Mother and Next of Kin
of JOEL ANTHONY DAVIS, JR., Deceased, and
on Behalf of the Heirs and Wrongful Death Beneficiaries
of JOEL ANTHONY DAVIS, JR., Deceased                                   PLAINTIFFS

VS.                                                        CAUSE NO. 1:20-cv-00160-GHD-DAS

ITAWAMBA COUNTY, MISSISSIPPI; SHERIFF
CHRIS DICKINSON; and DEPUTY FRED HECKART                               DEFENDANTS

## OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Presently before the Court is the Defendants' motion for summary judgment [41]. In the

Complaint, the Plaintiffs assert federal and state law claims against the Defendants related to the

death of the Decedent Joel Anthony Davis. Upon due consideration, the Court finds that the

motion should be granted and the Plaintiffs' claims dismissed.

### I.   Factual and Procedural Background

On August 21, 2019, at approximately 4:00 p.m. during dry and clear weather conditions,

the Decedent was traveling by motorcycle on Liberty Road/New Chapel Road in rural Itawamba

County [Complaint, Doc. 1, at ¶ 9]. The Defendant Itawamba County Deputy Sheriff Heckart, on-

duty and traveling along the same road, reported that he observed that the Decedent was driving

the motorcycle on the wrong side of the road at a very high rate of speed [1, at ¶¶ 10-11]. Heckart

initiated a pursuit of the Decedent, using his blue lights and siren in an attempt to pull over the

Decedent [1, at ¶ 11]. The Decedent continued to drive at a high rate of speed and failed to properly

stop during a pursuit of some eight miles along rural country roads [1, at ¶ 11]. The Decedent

ultimately lost control of the motorcycle and crashed, whereupon he was thrown from the

motorcycle [Doc. 41-3 at p. 25; Doc. 41-4]. The Decedent was provided on-scene medical care

and was evacuated via helicopter from the accident scene to North Mississippi Medical Center, where he died five hours later [Doc. 43-4]. A forensic toxicology report indicated that the Decedent had, among other substances, methamphetamine and amphetamines in his bloodstream [Doc. 43-2]. This litigation followed.

The Plaintiffs bring this action against the three Defendants, asserting federal claims for excessive force under the Fourth Amendment against Defendants Heckart and Dickinson, for due process violations and failure to train under the Fourteenth Amendment against Defendants Itawamba County and Dickinson, for deliberate indifference to the Decedent's medical needs against Defendant Heckart, and for conspiracy to deny the Decedent of his civil rights against all three Defendants. The Plaintiffs further assert a state law survival claim and wrongful death claim against all three Defendants. The Defendants have now filed the presently pending motion seeking dismissal of the Plaintiffs' claims, arguing that the Plaintiffs' state law claims are barred by the Mississippi Tort Claims Act, that the Individual Defendants are entitled to qualified immunity regarding the Plaintiffs' federal claims against them, and that Defendant Itawamba County is not liable under the requisite standards regarding municipal liability.

## II.  Standard of Review

### Summary Judgment

The Court grants summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for the motion and identifying those portions of the record the moving party believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### Qualified Immunity

As for the Individual Defendants' assertion of qualified immunity, "qualified immunity serves to shield … government officials from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001); see *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ("Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right.") (quoting *Mace v. City of Palestine, Tex.*, 333 F.3d 621, 623 (5th Cir. 2003)). Qualified immunity calls for

a bifurcated test in which the court must first determine (1) "whether the plaintiff has alleged a violation of a clearly established statutory or constitutional right that was clearly established at the time of the challenged conduct and, if so, (2) whether the defendant [official's] conduct was objectively unreasonable." *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'" *Id.* (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Id.*

### Municipal Liability

Under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) and its progeny, a municipality may only be held liable under 42 U.S.C. § 1983 for violating a citizen's constitutional rights if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no respondeat superior liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell*, 436 U.S. at 694. The alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability under *Monell*, a plaintiff must therefore demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or

custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory v. City of Jackson*, 335 Fed. App'x 446, 448-449 (5th Cir. 2009); *Crawford v. Desoto Cty. Sheriff's Dep't*, No. 3:19CV013-MPM-RP, 2020 WL 55611, at *5 (N.D. Miss. Jan. 6, 2020).

### III. Analysis and Discussion

**The Plaintiffs' Federal Claims Against the Individual Defendants**

The Plaintiffs have asserted federal claims against the Individual Defendants – for excessive force against both of them, for failure to train against Sheriff Dickinson, and for deliberate indifference to the Decedent's medical needs against Defendant Heckart. Both individual Defendants assert that they are entitled to qualified immunity regarding the Plaintiff's federal claims against them.

As noted above, qualified immunity shields state officials from suit so long as the official's complained-of conduct did not violate a clearly established statutory or constitutional right that a reasonable official would have known violated the law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). The Plaintiff bears the burden of negating a defendant's invocation of qualified immunity. *Howell v. Town of Ball*, 827 F.3d 515, 525 (5th Cir. 2016). In addition, it is axiomatic that, in order to state a claim against an individual government official defendant, a Plaintiff "must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676; see *Hernandez v. Duncanville Sch. Dist.*, No. 3:04-CV-2028, 2005 WL 723458, at \*9 (N.D. Tex. Mar. 29, 2005) (holding that, in order to state claim against an individual governmental actor, a plaintiff must "state specifically how [each governmental official] took actions that deprived [the plaintiff] of a constitutionally or statutorily protected right, and state specifically how the conduct of each caused [the plaintiff's] injuries.")

As for the Plaintiffs' Fourth Amendment claims against Deputy Heckart, it is undisputed that Heckart, upon observing the Decedent driving a motorcycle at a high rate of speed on the wrong side of the road, simply carried out his duty as a law enforcement officer to attempt to stop the Decedent – he did so by following, pursuing, and attempting to pull over the Decedent. See, e.g., *Smith v. City of Southaven*, 308 So. 3d 456, 467 (Miss. Ct. App. 2020) (law enforcement officer possesses duty to attempt to stop speeding vehicle). The Plaintiffs have presented no evidence to the contrary – there is no evidence that Heckart exerted any force whatsoever on the Decedent, much less any excessive force. The Plaintiffs' sole allegations regarding Heckart and the use of force are that Heckart's pursuit of the Decedent itself constituted unconstitutional excessive force and that Heckart, at the time of the Decedent's accident, for a moment believed he had run his patrol car into the Decedent after the Decedent had been thrown from the motorcycle.

The undisputed evidence shows, however, that Heckart ran into a culvert, and not the Decedent, at the conclusion of the pursuit. [41-3 at p. 26]. As for the constitutionality of the pursuit itself, the United States Supreme Court has ruled that a suspect's accidental crash during a police pursuit does not give rise to a claim by the suspect under the Fourth Amendment. *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) (holding that a suspect's accidental crash during police pursuit does not implicate the Fourth Amendment); *Cty. of Sacramento v. Lewis*, 523 U.S. 833,

854 (1998); *Littlejohn v. New Orleans City*, 493 F. Supp. 3d 509, 518–19 (E.D. La. 2020). Here, there is no evidence that the Decedent's crashing of his motorcycle was anything other than accidental on his part, nor is there any evidence that Deputy Heckart violated any departmental standards regarding pursuits or that he intended to harm the Decedent. Accordingly, the Court finds that Heckart is entitled to qualified immunity as to the Plaintiffs' Fourth Amendment claims.

The Plaintiffs' next claim is that Heckart failed to provide adequate medical care to the Decedent after the accident. Under the Fourteenth Amendment, the Decedent was "entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Little v. Keirsey*, 69 F.3d 536 (5th Cir. 1995). To state a claim for the unconstitutional denial of medical care in a case such as the one *sub judice*, a plaintiff must show that an officer's actions or omissions were deliberately indifferent to a substantial risk of serious medical harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wagner v. Bay City, Texas*, 227 F.3d 556, 561 (5th Cir. 2000). To demonstrate deliberate indifference, a plaintiff must show that the officer "knows of and disregards an excessive risk to" the Decedent's safety. *Garza v. City of Donna*, 922 F.3d 626, 635-36 (5th Cir. 2019).

The undisputed evidence in the case *sub judice* is that Heckart immediately radioed for medical personnel after the accident occurred, and that an air ambulance was then requested a few minutes later to transport the Decedent to the hospital [41-3 at pp. 42-44]. Medical personnel arrived on the scene within minutes and the Decedent was rapidly transported via air ambulance to the hospital [*Id.*].

The Fifth Circuit, in *Batiste v. Theriot*, 458 Fed. App'x 351 (5th Cir. 2012), addressed a similar situation. In *Batiste*, the plaintiff died a short time after being shot with a taser in a foot pursuit with police; his family sued the involved officers, alleging excessive force and the denial

of medical care. The Fifth Circuit held that the on-scene officers were entitled to qualified immunity and had not acted with deliberate indifference to the plaintiff's clear medical needs because, *inter alia*, the officers followed departmental policy regarding the procuring of medical care. *Batiste*, 458 Fed. App'x at *4-*5.

Here, likewise, there is no evidence that Heckart acted with deliberate indifference to the Decedent's medical needs. Indeed, as noted above, the undisputed evidence is that Heckart himself, before even exiting his patrol car after the accident, immediately called for medical personnel, who arrived quickly, and that an air ambulance was then quickly called to transport the Decedent to the hospital for further medical care. [41-3 at pp. 42-44].

The case of *Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020), is clearly distinguishable. *Dyer*, while not cited by the Plaintiffs, is in any event inapposite. In *Dyer*, the Fifth Circuit held that a genuine issue of material fact existed regarding the defendant officers' entitlement to qualified immunity when the decedent detainee had struck his head violently against the interior metal cage and window of a patrol car over forty times *en route* to jail during a drug-induced psychosis and had sustained serious and outwardly obvious head trauma as a result; the detainee died a few hours later from cranial trauma. *Id*. at 381-82. The officers in *Dyer* had witnessed the trauma and had subjective knowledge of the decedent detainee's injuries and the cause of those injuries – rather than seek medical care, however, the officers simply told jail personnel that the decedent detainee had been medically cleared at the scene. *Id*.

The facts in the case *sub judice* are simply nowhere near as stark as those present in *Dyer*, and the Plaintiffs have not shown that Heckart's actions or omissions were deliberately indifferent to a substantial risk of serious medical harm. In fact, as already noted, Heckart called for medical personnel before even exiting his patrol car after the accident; those medical personnel arrived

within minutes and an air ambulance was then requested to transport the Decedent to the hospital for further medical care. In light of these undisputed facts, there is simply no evidence that Heckart acted with deliberate indifference to the Decedent's medical needs. For these reasons, the Court finds that the Plaintiffs have not established that Heckart violated a clearly established statutory or constitutional right regarding the Decedent's right under the Fourteenth Amendment to adequate medical care, or that Heckart's conduct was objectively unreasonable. Heckart is therefore entitled to qualified immunity and summary judgment as to this claim shall be granted.

As for the Plaintiffs' claims against Sheriff Dickinson, the Plaintiffs have presented no evidence whatsoever that Sheriff Dickinson engaged in excessive force against the Decedent, or that he failed to train Heckart or other department personnel regarding pursuits of suspects. Indeed, the Plaintiffs' sole argument regarding Sheriff Dickinson is that only "limited discovery" took place regarding Sheriff Dickinson's qualified immunity defense [Doc. 43 at p. 5]. The Plaintiffs, however, never filed a motion seeking additional discovery in this matter, nor did they ever raise any issues regarding discovery. Such an argument at this late stage of the proceedings, long after the close of discovery, is simply wholly insufficient to meet the Plaintiffs' burden regarding Sheriff Dickinson's qualified immunity defense, and does not rise to the level of alleging that Dickinson engaged in conduct that deprived the Decedent of any clearly established statutory or constitutional rights. See, e.g., *Ashcroft*, 556 U.S. at 676 (plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez*, 2005 WL 723458, at *9 (in order to state claim against an individual governmental actor, a plaintiff must "state specifically how [each governmental official] took actions that deprived [the plaintiff] of a constitutionally or statutorily protected right, and state specifically

how the conduct of each caused [the plaintiff's] injuries."). Accordingly, the Court finds that Sheriff Dickinson is entitled to qualified immunity as to the Plaintiffs' claims against him.

### The Plaintiffs' Conspiracy Claim

As for the Plaintiffs' claim under 42 U.S.C. 1985 that the Defendants conspired to violate the Decedent's civil rights, 42 U.S.C. 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

To prevail on a § 1985(3) claim, a plaintiff must prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; and (4) that a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983). Moreover, the Supreme Court has stated that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971).

In the case *sub judice*, the Plaintiffs make no allegations or argument whatsoever regarding this claim and fail to even attempt to establish the existence of any conspiracy on the part of the Defendants to deprive the Decedent of any of his civil rights. As such, because the Court finds that the Plaintiffs have failed to allege or submit any evidence of a conspiracy based on discriminatory animus, the Court finds that summary judgment is appropriate as a matter of fact and law, and shall dismiss the Plaintiffs' Section 1985 claims.

### The Plaintiffs' Federal Claims against Itawamba County

As noted above, in order to establish Itawamba County's liability in this case, the Plaintiffs must identify a policy or custom that caused or was the moving force behind the complained-of constitutional deprivation(s). *Monell*, 436 U.S. at 694. Isolated incidents are not sufficient to demonstrate that a policy exists. See *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc) (holding that "[i]solated violations are not the persistent, often repeated, constant violations that constitute custom and policy"); *Estate of Pernell v. City of Columbus*, No. 1:08CV40-D-D, 2010 WL 1737638 (N.D. Miss. Apr. 28, 2010).

As is the case with the Plaintiffs' allegations against Sheriff Dickinson, the Plaintiffs' sole argument regarding the potential liability of Itawamba County are that the parties engaged in only "limited discovery" regarding Itawamba County's potential liability in this matter [Doc. 43 at p. 5]. As noted above, however, the Plaintiffs never filed a motion seeking additional discovery in this matter nor did they ever heretofore argue that the discovery conducted by the parties was insufficient. The Plaintiffs have not identified a policy or custom that caused or was the moving force behind the complained-of constitutional deprivations, and thus have failed to present sufficient evidence to proceed with this claim; the Court shall therefore grant Itawamba County's motion for summary judgment as to the Plaintiffs' federal claims. *Monell*, 436 U.S. at 694.

### The Plaintiffs' State Law Claims

The Defendants argue that the Plaintiff's state law claims against them are barred by the Mississippi Tort Claims Act. The Court agrees.

The Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, *et seq.*, which is the exclusive civil state law remedy against governmental entities and their employees for tortious acts or omissions giving rise to a suit, applies to the Plaintiffs' state law claims. Under the MTCA,

the Defendants may not be held liable for acts or omissions in the performance or execution of duties or activities relating to police protection unless those acts or omissions were committed in "reckless disregard of the safety and well-being of any person ***not engaged*** in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) (emphasis added).

Here, it is undisputed that Deputy Heckart was engaged in the performance and execution of police protection duties at all relevant times. It is likewise undisputed that the Decedent was under the influence of amphetamines and methamphetamine at all relevant times [41-2]. Mississippi law makes clear that operating a motor vehicle while under the influence of a controlled substance such as amphetamines or methamphetamine constitutes "criminal activity." *See* Miss. Code Ann. §§ 41-29-115; 63-11-30(1)(c); *Estate of Williams ex rel. v. City of Jackson*, 844 So.2d 1161, 1165 (Miss. 2003). It is further undisputed that the Decedent was operating a motor vehicle, his motorcycle, at highly excessive speeds while driving on the wrong side of the road. This activity, personally observed and reported by Heckart, indisputably constituted obvious criminal activity and gave rise to Heckart's pursuit of the Decedent. Miss. Code Ann. §§ 63-3-1201, 97-9-72(2). The Decedent then proceeded to continue this activity, along with fleeing from law enforcement and failing to yield to Heckart's blue lights and siren, with Heckart in pursuit.

Mississippi law is clear that "if the victim is engaged in an illegal activity that is the cause of the harm, the government is immune from liability." *Williams v. City of Jackson*, 844 So. 2d 1161, 1164 (Miss. 2003); *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 997 (Miss. 2003). In the case *sub judice*, there is no dispute that the Decedent was involved in criminal activity at the time of the accident – he was operating a motor vehicle while under the influence of illegal substances, was operating the motor vehicle in an extremely unsafe manner, and was fleeing from law enforcement and failing to yield to blue lights and a siren. The Decedent's acts, which

constituted criminal activity, directly led to Heckart's pursuit of him and ultimately to the accident. Under the MTCA, the Defendants may not be held liable under these circumstances. Accordingly, the Court finds that the MTCA's relevant exception to governmental liability applies and the Plaintiffs' state law claims are barred. The Court shall therefore grant the Defendants' motion for summary judgment as to the Plaintiffs' state law claims.

### *IV. Conclusion*

In sum, for all of the foregoing reasons, the Court finds that the Defendants' motion for summary judgment should be granted and the Plaintiffs' claims dismissed with prejudice.

An order in accordance with this opinion shall issue this day.

THIS, the  11th  day of January, 2022.

_____
SENIOR U.S. DISTRICT JUDGE